IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LEWIS CLAY SHULER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-00266 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| DARON HALL, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is a pro se complaint for alleged violation of civil rights (Doc. No. 1), filed by Lewis Clay Shuler, Jr., who was a pretrial detainee in the custody of the Davidson County Sheriff's Office at the time the complaint was filed. Less than a month after filing his complaint, Plaintiff was transferred to the custody of the Tennessee Department of Correction (TDOC). (*See* Doc. No. 4.) He is now incarcerated at the Northwest Correctional Complex in Tiptonville, Tennessee. (*See* Doc. No. 7.) After initially filing an application for leave to proceed in forma pauperis (IFP) that was deficient, Plaintiff has now refiled his IFP application. (Doc. No. 6.)

This matter is now before the Court for a determination of Plaintiff's pauper status and an initial review of the complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## APPLICATION TO PROCEED AS A PAUPER

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee of $350.00 required by 28 U.S.C. § 1914(a). Plaintiff has now filed an affidavit of poverty and a copy of his inmate trust fund account statement for the period since his transfer to TDOC, accompanied by a form signed by a prison official on

the date that Plaintiff's account statement was printed. (Doc. No. 6.) The Court finds this showing sufficient to meet the statutory requirements for obtaining IFP status under 28 U.S.C. § 1915(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 6) will be granted by separate Order.

## **INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally

construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that on the night of November 24, 2018, Cpl. Timothy Sturgeon, Jr., entered Plaintiff's cell and propositioned him. (Doc. No. 1 at 5, 16.) Plaintiff declined Sturgeon's sexual advances, whereupon Sturgeon winked and left his cell. (*Id.* at 16.) The following morning, Plaintiff complained to Lt. Cole, who stated that he would "file a [Prison Rape Elimination Act claim] and notify the Chief Jamie Johnson and Administrator Ruby Joyner." (*Id.* at 5, 15.) On the evening of November 25, 2018, Sturgeon returned to work his assigned shift on the pod where Plaintiff resided and unlocked the pod door for recreation time. (*Id.* at 16.) Plaintiff complained

that, due to the PREA complaint, he and Sturgeon should not be in the same pod. (*Id.* at 5.) He begged Sturgeon to call the Sergeant or Lieutenant. (*Id.*)

Sturgeon escorted Plaintiff to the hallway exit, and Plaintiff "immediately walked through the exit and went to the [lieutenant's] office and knocked on the door." (*Id.* at 16.) Sturgeon pursued Plaintiff "in [an] attempt to persuade Plaintiff in a provocative manner," stating that he did not return to Plaintiff's cell while Plaintiff was asleep and was sorry because he "did not know [Plaintiff] was not like that." (*Id.*) Plaintiff alleges that at that point, "because of the emotional distress caused from [Sturgeon's] prior harassment [the night before], then given [Sturgeon's] present and persistent action of provocation within the proximity of the plaintiff, Plaintiff then winced to shun [Sturgeon]." (*Id.* at 17.) Sturgeon "then back[ed] away and reached for his pepper spray[,] then paused as Plaintiff took off his shirt to protect hi[m]self from the harm of the chemical weapon." (*Id.*) Sturgeon "then acknowledge[d] that the Plaintiff stayed back at a safe distance motionless" as Sturgeon radioed in a "code red." (*Id.*)

"Then without any warnings or given directives [Sturgeon] began to spray the chemical weapon at the Plaintiff as the Plaintiff started to get on the floor[.]" (*Id.*) Sturgeon "began to walk towards the Plaintiff while still spraying the chemical weapon" and directed a racial epithet at him. (*Id.*) Whereupon, "[u]nder complete duress, Plaintiff then lunge[d] towards [Sturgeon] in an effort to grab [him] to keep [him] from causing anymore physical harm to Plaintiff." (*Id.*) Sturgeon then got Plaintiff onto his stomach and attempted to restrain him with a chokehold. (*Id.*) Plaintiff tucked his chin to his chest "to avoid the strangulation," and "then placed his left arm behind his back as back up arrived." (*Id.*)

Plaintiff then heard a voice he knew to be Lt. Dial state, "careful, he likes to sue," and was struck in the face. (*Id.*) He then heard a voice which he did not recognize tell him to "stop

4

resisting," although Plaintiff was not resisting. (*Id.*) Plaintiff was struck by two more blows to the face, while hearing a voice again tell him to "stop resisting." (*Id.* at 18.) He alleges that Lt. Dial held him down (though both his arms were held behind his back and both legs were penned down) while Myatt Chadwick kicked him several times in the face. (*Id.* at 10–11.) Plaintiff then briefly lost consciousness. (*Id.* at 18.) Lt. Dial "gave nurses orders to just wipe the blood off the plaintiff['s] face and placed Plaintiff in solitary confinement without medical treatment[.]" (*Id.* at 11.) Plaintiff alleges that Defendants Jacob Steen, Michael Banks, Dustin Nicholson, Elio Ledezma, Benjamin Stafford, and David Farmby were all "present and also personally involved with the unnecessary use of excessive force" on November 25, 2018. (*Id.* at 18–19.)

Plaintiff alleges that Nurse Practitioner Daniell Cullin responded to his cell after the altercation, observed Plaintiff's facial swelling and heard him complain of extreme shoulder pain, and responded that there was "nothing wrong with it" and that "the swelling will go down." (*Id.* at 13.) Cullin then left Plaintiff's cell, and never prescribed pain medication or sent him to the hospital for his injuries. (*Id.* at 13–14.) Plaintiff alleges that Dr. Kenneth Wilkens will not respond to his request for sick calls and has simply ignored his medical needs. (*Id.* at 14.) He further alleges that Dr. Wilkens "will not send plaintiff to appointments for follow ups from past surgery that left plaintiff with pains to the left side of his stomach. . . ." (*Id.*) Plaintiff alleges that Sara Verdell failed to properly respond to his sick calls and grievances requesting treatment for depression. (*Id.*)

Plaintiff alleges that Amanda Buchanan and Melinda Stephens, the administrators of health services, "refuse to aid the plaintiff with his medical records for court purposes" and refused to aid him in any way after his PREA claim was filed, because of Plaintiff's complaint in Case No. 3:18-cv-01223. (*Id.* at 13.) He alleges that Thomas Conrad failed to respond to numerous grievances about Plaintiff being targeted by staff members in retaliation for an incident in 2017, until he

5

"finally responded . . . by stating 'Sir, it doesn't appear that officers are targeting you for anything.'" (*Id.* at 15.) Plaintiff alleges that he had expressed to Conrad "that [he] was fighting a high profile case and under massive stress mentally and emotionally," and that he feared being charged with additional disciplinary violations by staff who were not appropriately disciplined for bringing false charges. (*Id.*) Plaintiff claims that Conrad's failure to act in response to Plaintiff's grievances and failure "to discipline staff led to plaintiff being physically assaulted." (*Id.*)

Plaintiff claims that Defendants Daron Hall, Tony Wilkes, Ruby Joyner, Jamie Johnson, Beth Gentry, Thomas Conrad, and Lt. Cole failed "to follow PREA procedures and properly investigate as well as discipline [Davidson County Sheriff's Office] staff members." (*Id.* at 7, 15.) He alleges that Joyner, Johnson, and Gentry failed to discipline staff who Plaintiff reported had retaliated against him for past complaints, and that this failure led to Dial and Chadwick's beating of Plaintiff. (*Id.* at 10.) Plaintiff further alleges that Joyner and Johnson deprived him of his property for sixty days, causing him to have to purchase new clothing and hygiene products from the commissary. (*Id.* at 9–10.) Joyner and Johnson also refused to allow Plaintiff to press charges against the individuals who assaulted him. (*Id.*) Defendant Gentry is alleged to have failed to relocate Plaintiff after his PREA complaint against Sturgeon; to have "chose[n] to keep Plaintiff in solitary confinement after disciplinary time . . . ended on 1-23-2019 out of retaliation [for] complaint filed against her (3:18-cv-01223)"; and to have ignored Plaintiff's request to be transferred to another facility due to the retaliation and intimidation he was enduring in Davidson County. (Doc. No. 1 at 10.)

Plaintiff alleges that Ms. Gearl (the "Program Manager") and "Hindsley (Chairman of the Board)" have violated his rights in connection with his disciplinary hearings. (*Id.* at 12.) He alleges that Gearl "purposefully denied all of plaintiff['s] appeals with witnesses in plaintiff's favor" and

6

denied him access to the courts by obstructing his ability to pay the filing fee. (*Id.*) He alleges that Hindsley denied him the right to present video proof and witness testimony in retaliation for Plaintiff's complaint in Case No. 3:18-cv-01223. (*Id.*) Plaintiff claims that he was denied due process at his disciplinary hearing and wrongfully sentenced to 60 days out of retaliation due to this "pending complaint against Disciplinary Board Members." (*Id.* at 5.)

As a result of the events of November 24 and 25, 2018, Plaintiff suffered facial injuries that left him "unable to see" from his left eye, a dislocated right shoulder, and psychological and emotional distress from the sexual harassment and assault. (*Id.* at 18.) Plaintiff seeks a declaration that Defendants' conduct violated his rights under the federal and Tennessee constitutions, as well as state common law; an injunctive order for Defendants to provide appropriate medical care, release Plaintiff from punitive segregation, and expunge his disciplinary record; and an injunctive order for the State of Tennessee to drop all charges of assault on an officer against him. (*Id.* at 6–7.) He also seeks an award of compensatory and punitive damages. (*Id.* at 8.)

IV. ANALYSIS

    1. Excessive Force

Plaintiff claims that excessive force was used against him on November 25, 2018. He makes this claim under the Eighth Amendment, pursuant to which the "core judicial inquiry" would be "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). However, because Plaintiff was a pretrial detainee at the time of this incident, his excessive force claim must be analyzed under the Fourteenth Amendment, pursuant to which he needs to demonstrate "only that the force purposely or knowingly used against him was objectively

unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding that claim of excessive force in violation of 14th Amendment Due Process Clause does not have subjective component because, e.g., "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'").

Plaintiff alleges that, when Defendant Sturgeon "attempt[ed] to persuade Plaintiff in a provocative manner" that he did not need to talk to the Lieutenant because Sturgeon was sorry for making advances and did not return to Plaintiff's cell after those advances were rejected, Plaintiff, in distress, "winced to shun [Sturgeon]." (Doc. No. 1 at 17.) Sturgeon then backed away and called for backup, reaching for his pepper spray while Plaintiff removed his shirt. (*Id.*) The Court is uncertain what Plaintiff means when he says he "winced to shun" Sturgeon. If this phrase indicates an aggressive move or the initiation of physical contact, Defendant Sturgeon's call for backup and deployment of his pepper spray would not be objectively unreasonable. Even if Plaintiff was not physically or verbally aggressive prior to Sturgeon calling for backup, he concedes that he removed his shirt as a defensive measure prior to Sturgeon deploying his pepper spray, and then "lunge[d] towards [Sturgeon] in an effort to grab [him]" after being sprayed. (*Id.*) According to the complaint, after Plaintiff was subdued on the ground and no longer resisting, Sturgeon attempted to choke him. (*Id.*) Despite Plaintiff's allegation that he was restrained and compliant when Defendants Dial and Chadwick arrived, he alleges that Dial proceeded to hold him down—with his "right and left arm behind [his] back and both legs penned down"—so that Chadwick could kick him in the face. (*Id.* at 11.)

Even viewing these allegations in the light most favorable to Plaintiff, the Court would be hard-pressed to find that Sturgeon acted unreasonably in using his pepper spray or taking Plaintiff to the ground. However, Plaintiff's allegation that Sturgeon attempted to choke him after he was

8

subdued, and the implication that Sturgeon then aided Lt. Dial in holding Plaintiff down so that further harm could be inflicted upon him, is sufficient to allow the excessive-force claim against Sturgeon to proceed for further development.

Presuming the truth of Plaintiff's allegation that he was restrained and compliant when Defendants Dial and Chadwick arrived, and that Dial proceeded to hold him down so that Chadwick could kick him in the face, Plaintiff has adequately alleged that this use of force was unreasonable. Accordingly, the excessive force claim will proceed against these Defendants. However, Plaintiff's allegations that Defendants Steen, Banks, Nicholson, Ledezma, Stafford, and Farmby were also "present and personally involved with the unnecessary use of excessive force" (Doc. No. 1 at 18–19), without any further factual support, are entirely conclusory. The complaint elsewhere alleges that Plaintiff was "viciously beaten by defendants (Lt Timothy Dial and Myatt Chadwick)" (*id.* at 10), confirming that these were the Defendants actively involved, along with Sturgeon, in the use of force against Plaintiff. Defendants Steen, Banks, Nicholson, Ledezma, Stafford, and Farmby will therefore be dismissed from this action.

2. Deliberate Indifference to Serious Medical Needs

Plaintiff claims that his medical needs in the wake of the November 25, 2018 altercation were not adequately met. He alleges that Nurse Practitioner Cullin dismissed his facial and shoulder injuries without treatment, and that Dr. Wilkens did not respond to his sick call requests but simply ignored his medical needs. (*Id.* at 13–14.)

The Fourteenth Amendment provides the basis for pretrial detainees to assert a Section 1983 claim of deliberate indifference to medical needs. *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008)). This claim is comprised of an objective and a subjective component. "The objective component requires the

9

plaintiff to show that the medical need at issue is 'sufficiently serious.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the subjective component, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." *Id.* at 939 (quoting *Farmer*, 511 U.S. at 837). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

For the purpose of initial review, the Court finds that Plaintiff alleges a sufficiently serious medical need resulting from his altercation with Sturgeon, Dial, and Chadwick. He was, after all, allegedly kicked in the face and temple area, resulting in bleeding, swelling, and visual disturbance, and his shoulder was allegedly dislocated.

As to the subjective requirement, in the immediate aftermath of the altercation, Nurse Practitioner Cullin allegedly saw that Plaintiff's eye was swollen shut, his face was lacerated, and his left temple area was swollen. Plaintiff also told Cullin that his shoulder was in extreme pain and he could not lift his arm. (Doc. No. 1 at 13.) Cullin's response to these observations was to tell Plaintiff that the swelling would go down, and to leave Plaintiff's cell without offering any pain medication or other treatment. (*Id.*) Thereafter, Plaintiff alleges, he directed sick call requests to Dr. Wilkens, followed by grievances over Wilkens' failure to respond to those requests, yet Wilkens declined to respond or to see Plaintiff to evaluate his injuries. (*Id.* at 14.) Because Plaintiff alleges that, in his sick call requests, he "expressed how much pain he is in" as a result of being "kicked numerous times in the face and head," and that he "cannot see correctly out of his left eye" and "is suffering from headache and constant nose bleeds" as well as "extreme pain in the right

10

shoulder [such that he is] unable to left [that] arm," the Court finds for purposes of initial review that Plaintiff has sufficiently alleged that both Wilkens and Cullin knew of and disregarded Plaintiff's need for treatment. The deliberate indifference claim will proceed for further development against these Defendants.

However, Plaintiff's allegation that Sara Verdell failed to respond to his requests in sick call requests and grievances "for help with emotional stress" (*id.*) does not contain sufficient factual matter to support the inference that Verdell knew of and disregarded any particular need for mental health treatment. *See Boone v. Everett*, No. 1:14CV1619 (AJT/TCB), 2015 WL 13047435, at *1 (E.D. Va. May 8, 2015) (finding that bare allegation of failure to respond to sick call requests, without any indication that the defendant otherwise knew of the extent of the medical need, does not provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The claim against Defendant Verdell will therefore be dismissed.

    3. Retaliation

Plaintiff alleges that Defendants Buchanan, Stephens, Gentry, and Hindsley retaliated against him in different ways because of the lawsuit he filed in Case No. 3:18-cv-01223. The Court construes these allegations as an attempt to claim retaliation under the First Amendment. In order to state such a claim, Plaintiff much allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

The Sixth Circuit has "conclusively resolved" that the filing of a civil rights lawsuit is protected conduct under the First Amendment. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (citing *Thaddeus–X*, 175 F.3d at 396 n. 12). However, assuming without deciding that the actions allegedly taken against Plaintiff by these Defendants were sufficiently adverse to deter a person of ordinary firmness from engaging in Plaintiff's protected conduct, the Court finds no factual allegations suggesting that such adverse actions were motivated by the filing or maintenance of Case No. 3:18-cv-01223. Of the Defendants named above, only Hindsley is a named defendant in Plaintiff's previous lawsuit, which was not served upon Hindsley until June 2019 (*see* Case No. 3:18-cv-01223, Doc. No. 14), after Plaintiff had already been transferred from Davidson County custody. In any event, Plaintiff's allegations of retaliatory motive are entirely conclusory, stating only that Buchanan, Stephens, Gentry, and Hindsley acted as they did "out of retaliation" or "due to pending complaint." (Doc. No. 1 at 10, 12–13.) "Conclusory allegations of retaliatory motive 'with no concrete and relevant particulars' fail to state a claim upon which relief may be granted." *Hunter v. Michigan Dep't of Corr.*, No. CIV. 5:09-CV-10299, 2009 WL 230591, at *2 (E.D. Mich. Jan. 30, 2009) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *see also Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003) ("Conclusory, unsupported allegations of the deprivation of rights protected by the United States Constitution or federal laws are insufficient to state a claim."). This claim will be dismissed.

4. Remaining Claims

No colorable claim is stated by Plaintiff's allegation that Hall, Wilkes, Joyner, Johnson, Gentry, Conrad, and Cole failed "to follow PREA procedures and properly investigate as well as discipline [Davidson County Sheriff's Office] staff members" (Doc. No. 1 at 7, 15), or his allegation that Joyner, Johnson, and Gentry failed to discipline staff who Plaintiff reported had

retaliated against him for past complaints, leading to Dial and Chadwick's beating of Plaintiff. (*Id.* at 10.) Violations of PREA procedures cannot be redressed through a private suit under Section 1983. *See*, *e.g.*, *Peterson v. Burris*, No. 14-cv-13000, 2016 WL 67528, at *2 (E.D. Mich. Jan. 6, 2016) (collecting cases). Moreover, the allegation of past, isolated failures to investigate unnamed staff members is insufficient to support a constitutional claim against these Defendants in their individual capacity, or, in the case of Hall and Wilkes, in their official capacity as Davidson County representatives.[1] *See Guglielmo v. Montgomery Cty., Ohio*, 387 F. Supp. 3d 798, 827 (S.D. Ohio 2019) (an isolated incident of failure to investigate or to discipline officers involved cannot give rise to municipal liability) (quoting *Greenlee v. Miami Twp., Ohio*, No. 3:14-cv-173, 2015 WL 631130, at *7 (S.D. Ohio Feb. 12, 2015)); *see also Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 701 n. 5 (6th Cir. 2006) ("We have not found any legal support for the proposition that, in the absence of deliberate indifference before a constitutional violation, a municipality may be liable for simply failing to investigate or punish a wrongdoer after the violation.").

Nor does Plaintiff allege a viable constitutional claim based on Defendants Joyner and Johnson allegedly depriving him of his property for sixty days, or refusing to allow him to press criminal charges against the officers who assaulted him. (Doc. No. 1 at 9–10.) A temporary deprivation of personal property is not an atypical and significant hardship in relation to the ordinary incidents of prison life, so as to support a due process claim, nor does it otherwise violate

---

[1] Hall and Wilkes are the only Defendants explicitly named in their official capacity. (Doc. No. 1 at 2.) Official capacity claims "are, in all respects other than name, to be treated as [claims] against the entity" that employs the individual. *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In order to properly allege the liability of Davidson County, Plaintiff must allege that his harm was caused by the execution of a policy of custom of the county. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). He fails to do so in his complaint.

13

the Constitution. *See*, *e.g.*, *Cummer v. Tilton*, No. CIVS-09-2702 DAD P, 2010 WL 2606502, at *5 (E.D. Cal. June 28, 2010). Moreover, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Accordingly, "there simply is no constitutional right to press charges against another individual." *Sipe v. Harder*, No. 9:08-cv-1365 FJS/ATB, 2010 WL 3418382, at *12 (N.D.N.Y. Aug. 4, 2010), *report and recommendation adopted*, No. 9:08-cv-1365 FJS/ATB, 2010 WL 3418388 (N.D.N.Y. Aug. 26, 2010).

Plaintiff also fails to state a viable claim based on Defendant Gentry's refusal to transfer him to another facility. "Well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison [or] transfers to any particular prison[.]" *Dancy v. George*, No. 07-cv-97-GFVT, 2007 WL 2251926, at *2 (E.D. Ky. Aug. 2, 2007) (citing, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)).

As to Plaintiff's allegation that his due process rights were violated by Gearl's purposeful denial of "all of plaintiff['s] appeals with witnesses in plaintiff's favor" and by Hindsley's denial of his right to present video proof and witness testimony (Doc. No. 1 at 5, 12) at his disciplinary hearing for assault on an officer, "[a] prison disciplinary decision comports with the requirements of due process" and should be upheld "'if some evidence supports the decision by the prison disciplinary board.'" *Humphreys v. Hemingway*, 77 F. App'x 788, 789 (6th Cir. 2003) (quoting *Superintendent, Mass. Corr. Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985)). "The quantity of evidence to support a disciplinary conviction is minimal and does not involve the independent assessment of witness credibility or weighing of evidence by the federal courts." *Id.* Here, Plaintiff alleges that his appeals were denied and his evidence was not considered, but he concedes that he resisted Sturgeon's efforts to subdue him during the underlying altercation, including by lunging

at Sturgeon in an effort to grab him. (Doc. No. 1 at 17.) These allegations do not support a plausible claim that the adverse disciplinary decision violated Plaintiff's due process rights.

Plaintiff also fails to state a viable claim by alleging that Gearl's obstruction of his ability to pay the filing fee denied him access to the courts, inasmuch as he does not claim that such access was in fact denied. "In order to state a claim of denial of access to the courts, [Plaintiff] [i]s required to show an actual injury to a non-frivolous legal proceeding arising from the defendants' alleged conduct." *Colvin v. Schaublin*, 113 F. App'x 655, 657 (6th Cir. 2004) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). This Court is familiar with Plaintiff's difficulties in securing cooperation from the Davidson County Sheriff's Office in paying filing fees from his inmate trust account. (*See* Doc. No. 5 at 1–2.) However, there is no indication that Plaintiff was prevented from pursuing his lawsuits on account of these difficulties in disbursing fee payments from his account; his cases in this Court have been heard. Therefore, Plaintiff does not state a viable claim for denial of access to courts.

In sum, Plaintiff states colorable constitutional claims against Defendants Sturgeon, Dial, and Chadwick for excessive force, and against Defendants Cullin and Wilkens for deliberate indifference to serious medical needs. These claims will be allowed to proceed for further development. However, any requests for injunctive relief against these Davidson County Sheriff's Office employees have been rendered moot by Plaintiff's transfer to state custody, and will therefore be dismissed. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)) (requests for injunctive relief directed specifically at alleged mistreatment at one facility are mooted by inmate's transfer to different facility).

15

## **CONCLUSION**

For these reasons, the Court finds that Plaintiff has stated nonfrivolous claims and will be allowed to proceed against Defendants Sturgeon, Dial, Chadwick, Cullin, and Wilkens. The remaining Defendants will be dismissed due to Plaintiff's failure to state a colorable claim against them.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE