IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LEWIS CLAY SHULER, JR., )
    Plaintiff, )
)
v. ) Civil Action No. 3:19-cv-00266
) Judge Richardson / Frensley
DARON HALL, et al., )
    Defendants. )

## REPORT AND RECOMMENDATION

### I. INTRODUCTION AND BACKGROUND

This case arises out of a use of force involving Plaintiff, who, at all times relevant to the instant action, was a pretrial detainee in the custody of the Davidson County Sheriff's Office ("DCSO"),[1] and multiple DCSO correctional officers. Docket No. 1. Plaintiff originally sued twenty-two (22) Defendants in their individual and official capacities,[2] seeking declaratory and injunctive relief, along with compensatory and punitive damages, as well as costs and fees. *Id.*

This matter is before the Court upon a Motion for Summary Judgment filed by the only remaining served Defendants in this action, Defendants Sgt. Chadwick Myatt and Lt. Timothy Dial (the "Officer Defendants").[3] Docket No. 31. Along with their Motion, the Officer Defendants have contemporaneously filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and the Declarations of Timothy Dial, Chadwick Myatt, and Dustin Nicholson.

---

[1] Less than one month after filing his Complaint, Plaintiff was transferred to the custody of the Tennessee Department of Correction ("TDOC"). *See* Docket No. 4. Plaintiff is now incarcerated at the West Tennessee Correctional Complex.

[2] Seventeen (17) Defendants were dismissed in an Order entered December 23, 2019. Docket No. 11. Three (3) Defendants (Daniell Cullin, Kenneth Wilkens, and Timothy Sturgeon, Jr.) have not been served. Thus, the instant Officer Defendants are the only remaining served Defendants in this action.

[3] Defendant Cpl. Timothy Sturgeon is no longer employed by the Davidson County Sheriff's Department. At the time of the filing of the instant Motion, Defendant Sturgeon had not yet been served; and service at this juncture would be futile in light of the running of the applicable statute of limitations.

Docket Nos. 31-1 – Docket No. 33. The Officer Defendants have additionally filed, under Seal, the video footage of the incident in question. Docket No. 31-4.

As grounds for their Motion, the Officer Defendants argue that they are entitled to summary judgment because it is undisputed that Plaintiff attacked a correctional officer, refused direct orders to place his hands behind his back, and resisted the officers' efforts to restrain him, such that their use of force to gain compliance from an actively resisting inmate was objectively reasonable and they are entitled to qualified immunity. Docket Nos. 31, 32.

Plaintiff has filed a Response to the instant Motion, arguing essentially that because he, in his Complaint, has a different account of what happened during the incident in question than do the Officer Defendants, there are genuine issues of material fact such that the Officer Defendants' Motion should be denied. Docket No. 49. Plaintiff has also filed a document entitled "Declaration in Opposition to Defendants' Motion for Summary Judgment," which is not a Declaration, but rather, is a second Response; and the Court will construe it as such. Docket No. 50.[4] In this submission, Plaintiff reiterates his contentions raised in his Complaint and Response. *See* Docket Nos. 1, 49, 50.

Although Plaintiff has responded to the instant Motion, Plaintiff has not responded to Defendants' Statement of Undisputed Material Facts. Plaintiff has, however, filed a document entitled "Response to Defendants' Summary Judgment Motion Plaintiff's Statement of Disputed Factual Issues," which does not actually respond to Defendants' Statement of Undisputed Material Facts, but instead raises nine arguments that Plaintiff argues "require the denial of Defendants' Motion." Docket No. 51. To the extent that Plaintiff intends this submission to constitute his own

---

[4] Plaintiff's "Declaration" is neither sworn nor in a form required by Fed. R. Civ. P. 56. Accordingly, it does not raise a genuine issue of material fact.

2
Case 3:19-cv-00266    Document 59    Filed 08/17/21    Page 2 of 15 PageID #: 314

Statement of Undisputed Material Facts, Plaintiff's submission fails to comply with either the Local or Federal Rules, as the "disputed facts" are incomplete questions, without answers and without the requisite citations to the record. *See Id.*

The Officer Defendants have filed a Reply to Plaintiff's Response arguing that because Plaintiff did not respond to their Statement of Undisputed Material Facts, those facts must be treated as undisputed for purposes of summary judgment, such that the undisputed facts establish that they did not violate Plaintiff's Fourteenth Amendment rights through the use of excessive force, they are entitled to qualified immunity, and they are entitled to a judgment as a matter of law. Docket No. 55. The Officer Defendants also note that the undersigned had previously warned Plaintiff that a failure to respond to the statement of facts "may result in the Court taking the facts alleged in the matter as true and granting the relief requested." *Id, citing* Docket No. 26.

The Officer Defendants also argue that Plaintiff, in his Response and other submissions, fails to overcome their qualified immunity defense. *Id.* Specifically, the Officer Defendants assert that Plaintiff has not carried his burden of demonstrating that they violated a clearly established right, nor has he cited any case that establishes that their actions constituted excessive force. *Id., citing Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020). The Officer Defendants reiterate that video evidence of the incident clearly shows that Plaintiff was not restrained when the Officer Defendants arrived, Plaintiff actively resisted and displayed zero cooperation throughout the encounter, and the officers' use of force ceased once Plaintiff was restrained and compliant. *Id.* The Officer Defendants therefore argue that they are entitled to qualified immunity and dismissal of all claims against them. *Id.*

The Officer Defendants have also filed a Response to Plaintiff's "Statement of Disputed Facts." Docket No. 56. In it, the Officer Defendants object to each of Plaintiff's "Disputed Facts."

*Id.* Additionally, the Officer Defendants object to Plaintiff's "Statement of Disputed Facts" because Plaintiff posits many of his additional facts as questions without any accompanying answers, and further because Plaintiff has failed to properly support each fact with specific citations to the record, as required by Fed. R. Civ. P. 56(c)(1) and Local Rule 56.01(c). *Id.* The Officer Defendants further argue that Plaintiff's "Statement of Disputed Facts" alleges several facts that are immaterial or irrelevant to the instant Motion because they either fail to dispute that their use of force to gain compliance from an actively resisting inmate was objectively reasonable or they are blatantly contradicted by video evidence in the record. *Id.*

For the reasons discussed below, the undersigned finds that there are no genuine issues of material fact and that the Officer Defendants are entitled to qualified immunity. Accordingly, they are entitled to a judgment as a matter of law and the undersigned recommends that their Motion (Docket No. 31) should be **GRANTED**.[5]

## II. UNDISPUTED FACTS[6]

### A. Relevant Background and Video Footage

On November 25, 2018, Plaintiff was a pretrial detainee in the custody of the Davidson County Sheriff's Office ("DSCO"). Docket No. 1.

On November 25, 2018, Plaintiff tackled Cpl. Timothy Sturgeon, shoved him into the wall, and threw several closed fist strikes at him. Docket No. 31-4, Video, at 0:44-0:55. Once on the ground on his stomach with Cpl. Sturgeon on his back, Plaintiff did not allow Cpl. Sturgeon to gain control of his arms. *Id.* at 1:02-1:26.

When the Officer Defendants and other officers arrived to assist Cpl. Sturgeon, Plaintiff's

---

[5] Because the Officer Defendants are the only remaining served Defendants in this matter, adoption of this Report and Recommendation would result in dismissal with prejudice of this action.

[6] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

arms were not restrained behind his back. *Id*. at 1:27. After the Officer Defendants and other officers arrived, multiple direct orders were given to Plaintiff to put his hands behind his back, but Plaintiff did not stop resisting as instructed. *Id.* at 1:27-2:05.

Defendant Dial briefly held Plaintiff's legs while other officers attempted to secure Plaintiff's arms in restraints behind his back. *Id.* at 1:30-1:40. After Defendant Dial released Plaintiff's legs, he did not apply any additional force to Plaintiff's legs. *Id.* at 1:39-2:10. Defendant Myatt did not deliver any knee strikes after Plaintiff stopped resisting. *Id.* at 1:27-2:05.

### B. Declaration of Timothy Dial

Current DCSO Chief of Security, Defendant Timothy Dial, was employed as a Lieutenant with the DCSO on November 25, 2018, the date at issue. Docket No. 31-1, Declaration of Timothy Dial ("Dial Dec."), ¶¶ 2-3.

On November 25, 2018, while in the MCC Sergeant's Office, Defendant Dial observed on the security camera monitor that Cpl. Sturgeon and an inmate were in the M-N hallway near the Lieutenant's Office. *Id*., ¶ 4. Based on Cpl. Sturgeon's body language, it appeared to Defendant Dial that Cpl. Sturgeon was dealing with a non-compliant inmate. *Id.* Defendant Dial called for officers to report to the hallway where Cpl. Sturgeon was located. *Id.*, ¶ 5. Defendant Dial began heading in that direction when he heard Cpl. Sturgeon issue a "Code Red" over the radio. *Id.* A "Code Red" indicates that an officer is in distress and in need of assistance. *Id.*

When Defendant Dial arrived at the doorway to the M-N hallway, he observed through the glass windows that Cpl. Sturgeon was on top of the inmate, who was resisting Cpl. Sturgeon's attempts to place the inmate in a felony prone position. *Id.*, ¶ 6. The felony prone position allows officers maximum opportunity to control resistant subjects while also minimizing the risk to the subjects. *Id.* The inmate, who Defendant Dial recognized as Plaintiff, was trying to push off the

floor to get Cpl. Sturgeon off his back. *Id.*, ¶ 7.

Once Defendant Dial unlocked and opened the door, he immediately moved to pin Plaintiff's legs, and, as Plaintiff continued to resist the efforts to control him by tensing his upper body and pushing off the floor, Defendant Dial helped gain control of Plaintiff's right arm so that it could be secured in hand restraints. *Id.*, ¶ 8. In an effort to gain compliance, Defendant Myatt delivered two knee strikes directed at Plaintiff's shoulder area. *Id.*, ¶ 9. After Defendant Dial released Plaintiff's legs, Defendant Dial did not apply any additional force to Plaintiff's legs. *Id.*, ¶ 10. Despite Plaintiff's continued resistance, the officers were eventually able to secure his arms in hand restraints behind his back. *Id.*, ¶ 11.

Throughout this incident, Plaintiff actively and aggressively resisted officers' attempts to control and restrain him, and he did not respond to directives from Defendant Dial or other officers to stop resisting. *Id.*, ¶ 12.

At all times, the force Defendant Dial applied to Plaintiff was reasonable, necessary, and in response to Plaintiff's aggressive behavior and resistance to officers' direct orders. *Id.*, ¶ 13. At no time during the officers' efforts to gain control of Plaintiff did he appear to lose consciousness. *Id.*, ¶ 14. Once Plaintiff was restrained, he was seen and cleared by medical staff. *Id.*, ¶ 16.

Shortly after this incident, and after reviewing all pertinent officer reports and video footage, Defendant Dial concluded in the submitted Use of Force report that, based on the totality of the circumstances, the force applied to Plaintiff appeared to comply with DCSO policy and procedure. *Id.*, ¶ 17; Docket No. 32-2.

At no time during this incident did Defendant Dial state that Plaintiff "likes to sue." *Id.*, ¶ 15.

### C. Declaration of Chadwick Myatt

Current DCSO Lieutenant, Defendant Chadwick Myatt, was employed as a Sergeant with the DCSO on November 25, 2018, the date at issue. Docket No. 31-3, Declaration of Chadwick Myatt ("Myatt Dec."), ¶¶ 2-3. On November 25, 2018, Defendant Myatt responded to a "Code Red" to MCC B-building. *Id.*, ¶ 4. A "Code Red" indicates that an officer is in distress and in need of assistance. *Id.*

When Defendant Myatt arrived at the doorway to the M-N hallway in B-building, Defendant Myatt saw through the glass windows that Cpl. Sturgeon was engaged with an actively resisting inmate, who he later learned was Plaintiff. *Id.*, ¶ 5. Cpl. Sturgeon was attempting to place Plaintiff in a felony prone position, which allows officers maximum opportunity to control resistant subjections while also minimizing the risk to subjects. *Id.*

Once Defendant Dial unlocked and opened the door, Defendant Myatt immediately attempted to gain head control of Plaintiff. *Id.*, ¶ 6. Defendant Myatt directed Plaintiff to stop resisting and to place his hands behind his back, but Plaintiff continued to resist by pressing his body off the floor and refusing to place his hands behind his back. *Id.*

Defendant Myatt feared that Plaintiff would get up, and in an effort to gain compliance, delivered one knee strike to the large muscle mass of Plaintiff's left shoulder, but because Plaintiff was squirming and actively resisting, the strike made contact with Plaintiff's head and neck area. *Id.*, ¶ 7. Defendant Myatt then applied pressure to Plaintiff's upper back to keep him on the floor to allow hand restraints to be applied. *Id.*, ¶ 8.

Plaintiff continued to resist and ignore directives to place his hands behind his back, and Defendant Myatt delivered a second knee strike to the large muscle mass of Plaintiff's left shoulder before officers were able to secure his hands in restraints. *Id.*, ¶ 9.

Throughout this incident, Plaintiff actively and aggressively resisted officers' attempts to control and restrain him, and he did not respond to directives from Defendant Myatt or other officers to stop resisting. *Id.*, ¶ 10.

At all times, the force Defendant Myatt applied to Plaintiff was reasonable, necessary, and in response to Plaintiff's aggressive behavior and resistance to officers' direct orders. *Id.*, ¶ 11. At no time during the officers' efforts to gain control of Plaintiff did he appear to lose consciousness. *Id.*, ¶ 12. Once Plaintiff was restrained, he was seen and cleared by medical staff. *Id.*, ¶ 13.

### D. Declaration of Dustin Nicholson

Currently an officer with the Murfreesboro Police Department in Murfreesboro, Tennessee, Dustin Nicholson was employed as a Corporal with DCSO on November 25, 2018, the date at issue. Docket No. 31-4, Declaration of Dustin Nicholson ("Nicholson Dec."), ¶¶ 2-3.

On November 25, 2018, Cpl. Nicholson responded to a "Code Red" to the M-N hallway. *Id.*, ¶ 4. A "Code Red" indicates that an officer is in distress and in need of assistance. *Id.* When Cpl. Nicholson arrived at the doorway to the M-N hallway, he saw through the glass windows that Plaintiff was on the ground squirming around with Cpl. Sturgeon on top of him attempting to restrain him. *Id.*, ¶ 5.

Once Cpl. Nicholson entered the M-N hallway, Cpl. Nicholson gave Plaintiff multiple direct orders to stop resisting and applied positive pressure to his body to prevent him from getting up. *Id.*, ¶ 6. In an effort to gain compliance Defendant Myatt delivered two knee strikes directed at Plaintiff's shoulder area. *Id.*, ¶ 7. Despite Plaintiff's continued resistance, the officers were eventually able to secure his arms in hand restraints behind his back. *Id.*, ¶ 8.

Throughout this incident, Plaintiff actively and aggressively resisted officers' attempts to control and restrain him, and he did not respond to directives from Cpl. Nicholson or other officers

to stop resisting. *Id.*, ¶ 9.

At no time during the officers' efforts to gain control of Plaintiff did he appear to lose consciousness. *Id*, ¶ 10. Once Plaintiff was restrained, he was seen and cleared by medical staff. *Id.*, ¶ 11.

### III. LAW AND ANALYSIS

#### A. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c) Procedures.**

**(1) *Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

### B. Local Rules 56.01(c) and (f)

With regard to responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, Local Rules 56.01(c) and (f) state:

> **(c)** **Response to Statement of Facts**. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> > (1) Agreeing that the fact is undisputed;
> > (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> > (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> The response must be made on the document provided by the movant or on another document in which the non- movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format. Pro se parties are excused only from providing a copy of the statement of additional disputed material facts to opposing counsel in an editable electronic format, and such pro se parties must otherwise comply with the requirements of this section.
>
> . . .
>
> **(f)** **Failure to Respond.** If a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed

undisputed for purposes of summary judgment.

As has been noted, Plaintiff has failed to respond to the Officer Defendants' Statement of Undisputed Material Facts. Accordingly, the facts contained therein are deemed undisputed for purposes of summary judgment.

    **C.**     **42 U.S.C. § 1983**

        **1.**     **Generally**     Plaintiff, a pretrial detainee at all times relevant to the instant action, alleges that the Officer Defendants used excessive force upon him in violation of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

        **2.**     **Excessive Force:** Because Plaintiff was a pretrial detainee at the time of this incident, his excessive force claim must be analyzed under the Fourteenth Amendment, pursuant

to which he needs to demonstrate "only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding that claim of excessive force in violation of 14th Amendment Due Process Clause does not have subjective component because, e.g., "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically'").

      **D.**      **Qualified Immunity**

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983). The right at issue "must have been articulated with a significant degree of particularity," (*Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989), so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand

that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id.,* (quoting *Harlow*, 457 U.S. at 818-19). "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, (quoting *Grossman v. Allen*, 950 F. 2d 338, 341 (6th Cir. 1991)(citations omitted).

### E. The Case at Bar

In order to prevail on an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the force used against him was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Plaintiff has failed to do so.

The undisputed facts in the case at bar establish that, on November 25, 2018, Plaintiff tackled Cpl. Timothy Sturgeon, shoved him into the wall, and threw several closed fist strikes at him. Docket No. 31-4, Video, at 0:44-0:55. Once on the ground on his stomach with Cpl. Sturgeon on his back, Plaintiff did not allow Cpl. Sturgeon to gain control of his arms. *Id.* at 1:02-1:26.

The undisputed facts further establish that when the Officer Defendants and other officers arrived to assist Cpl. Sturgeon, Plaintiff's arms were not restrained behind his back (*Id*. at 1:27), and that after the Officer Defendants and other officers arrived, multiple direct orders were given to Plaintiff to put his hands behind his back, but Plaintiff did not stop resisting as instructed (*Id.* at 1:27-2:05).

Additionally, the undisputed facts establish that Defendant Dial briefly held Plaintiff's legs while other officers attempted to secure Plaintiff's arms in restraints behind his back (*Id.* at 1:30-1:40), but that after Defendant Dial released Plaintiff's legs, he did not apply any additional force

to Plaintiff's legs. *Id.* at 1:39-2:10. Defendant Myatt did not deliver any knee strikes after Plaintiff stopped resisting. *Id.* at 1:27-2:05.

It is also undisputed that, at no time during the officers' efforts to gain control of Plaintiff did he appear to lose consciousness, and that once Plaintiff was restrained, he was seen and cleared by medical staff. Dial Dec., ¶¶ 14, 16; Myatt Dec., ¶¶ 12, 13; Nicholson Dec., ¶¶ 10, 11.

Finally, it is undisputed that, at all times, the force applied to Plaintiff was reasonable, necessary, and in response to Plaintiff's aggressive behavior and resistance to officers' direct orders; and that after this incident, and after reviewing all pertinent officer reports and video footage, Defendant Dial concluded in the submitted Use of Force report that, based on the totality of the circumstances, the force applied to Plaintiff appeared to comply with DCSO policy and procedure. Dial Dec., ¶¶ 13,17; Docket No. 32-2.

## IV. CONCLUSION

In light of the foregoing and for the reasons discussed above, the undersigned finds that there are no genuine issues of material fact and that the Officer Defendants are entitled to qualified immunity. Accordingly, they are entitled to a judgment as a matter of law and the undersigned recommends that their Motion (Docket No. 31) should be **GRANTED**.[7]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See*

---

[7] Because the Officer Defendants are the only remaining served Defendants in this matter, adoption of this Report and Recommendation would result in dismissal with prejudice of this action.

*Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**